UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT


ANTHONY NICHOLAS BRUNETTI          :
                                   :                    PRISONER
        v.                         :        Case No. 3:12cv1327 (MPS)
                                   :
WARDEN SEMPLE                      :


**RULING ON PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner Anthony Nicholas Brunetti ("Brunetti"), currently confined at the Garner

Correctional Institution in Newtown, Connecticut, commenced this action for writ of habeas

corpus *pro se* pursuant to 28 U.S.C. § 2254.  He challenges his Connecticut conviction for

murder.  For the reasons that follow, the petition will be denied.

I.      Procedural Background

Following a jury trial in the Connecticut Superior Court for the Judicial District of

Ansonia/Milford, Brunetti was convicted of murder.  On June 12, 2002, Brunetti was sentenced

to a term of imprisonment of sixty years.  On November 1, 2005, the Connecticut Supreme Court

reversed the judgment of conviction on the ground that the trial court had improperly admitted

into evidence items obtained as a result of a search of Brunetti's home.  *State v. Brunetti*, 276

Conn. 40, 42, 883 A.2d 1167, 1169 (2005) ("*Brunetti I*").  The Connecticut Supreme Court held

that, under the state constitution, where joint occupants have control over the premises and both

are present when consent to search is sought, both joint occupants must consent to the search for

the search to be valid under the consent exception to the warrant requirement.  This claim was

not preserved at trial.  *Id.* at 45, 883 A.2d at 1171.  The Connecticut Supreme Court granted the

state's motion for reconsideration en banc and reversed the earlier decision on the ground that,

contrary to the determination in *Brunetti I*, the record was inadequate to review the merits of

Brunetti's unpreserved claim.  *State v. Brunetti*, 279 Conn. 39, 42-43, 901 A.2d 1, 6 (2006)

("*Brunetti II*"), *cert. denied*, 549 U.S. 1212 (2007).

In May 2007, Brunetti filed a petition for writ of habeas corpus in state court asserting a

claim of ineffective assistance of trial counsel.  Following a hearing, the state court denied the

petition.  *Brunetti v. Warden, State Prison*, No. CV074001716, 2010 WL 936908 (Conn. Super.

Ct. Feb. 11, 2010).  The Connecticut Appellate Court affirmed the denial and the Connecticut

Supreme Court denied certification.  *Brunetti v. Commissioner of Correction*, 134 Conn. App.

160, 37 A.3d 811 ("*Brunetti III*"), *cert. denied*, 305 Conn. 903, 44 A.3d 180 (2012).

II.    Factual Background

On the evening of June 23, 2000, the thirty-five year old victim walked from her house to

a bar in West Haven.  After leaving the bar, she encountered Brunetti and asked whether he had

any marijuana.  Brunetti stated that he did and asked her to smoke it with him behind a nearby

school.  After smoking the marijuana, Brunetti and the victim began kissing and engaging in

sexual foreplay.  A short time later, they partially removed their clothes and began engaging in

sexual intercourse on the ground.  When the victim asked Brunetti to stop, he ignored her and

continued until he reached an orgasm.  The victim then got up, cursed at Brunetti and threatened

to call the police.  In response, Brunetti grabbed the victim in a choke hold, punched her in the

head, dragged her by the hair and feet, and repeatedly struck her over the head with an empty

glass bottle.  Brunetti left the victim's body in high grass behind the school, throwing her

2

clothing and the bottle nearby.  As he left the area, Brunetti walked past Jerrell Credle, Mike

Banores, Jose Rivera, and Michael Scott.  Credle recognized Brunetti and greeted him.  Brunetti

acknowledged Credle but did not stop to talk.  Brunetti then returned home where he lived with

his parents. *Brunetti II,* 279 Conn. at 43-44, 901 A.2d at 6-7.

 Police discovered the victim's body the following day and obtained information

suggesting that Brunetti was involved in the murder.  Detectives went to Brunetti's home to

question him.  The detectives approached Brunetti's parents who were sitting on the porch and

asked to speak to him.  Brunetti's father went to get Brunetti while the detectives waited outside.

The detectives told Brunetti that they wanted to bring him to the West Haven Police Department

for questioning and asked him to produce the clothes he had worn the night before.  The

detectives brought Brunetti to the police station and his parents followed in their own car. *Id.* at

44-45, 901 A.2d at 7.

 At the police station, the detectives questioned Brunetti in an interrogation room.  His

parents remained in the waiting area.  While Brunetti was being questioned, other detectives

approached his parents and asked them to sign a form consenting to a search of their home.

Brunetti's father signed the form; his mother refused to sign.  Brunetti's parents then left the

police station to let the police into their home to conduct the search.  Brunetti remained at the

police station with the detectives.  During the search, police officers found several items of

recently washed clothing in the washer, including a pair of sweat pants, two tank tops, and a

towel.  The sweat pants and towel had "bleach-like stains" and one of the tank tops had reddish

brown "blood-like" stains.  When the detectives questioning Brunetti were informed about the

clothing, they told Brunetti and asked him to elaborate.  Brunetti became upset and asked for a

Bible.  The detectives issued *Miranda* warnings and Brunetti gave an inculpatory statement describing how he murdered the victim.  *Id.* at 7-8, 901 A.2d at 45-46.

III.    Standard

The federal court will entertain a petition for writ of habeas corpus challenging a state court conviction only if the petitioner claims that his custody violates the Constitution or federal laws.  28 U.S.C. § 2254(a).

The federal court cannot grant a petition for a writ of habeas corpus filed by a person in state custody with regard to any claim that was rejected on the merits by the state court unless the adjudication of the claim in state court either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  The federal law defined by the Supreme Court "may be either a generalized standard enunciated in the Court's case law or a bright-line rule designed to effectuate such a standard in a particular context."  *Kennaugh v. Miller*, 289 F.3d 36, 42 (2d Cir.), *cert. denied*, 537 U.S. 909 (2002).  Clearly established federal law is found in holdings, not dicta, of the Supreme Court at the time of the state court decision.  *Carey v. Musladin*, 549 U.S. 70, 74 (2006).  Second Circuit law which does not have a counterpart in Supreme Court jurisprudence cannot provide a basis for federal habeas relief.  *See Del Valle v. Armstrong*, 306 F.3d 1197, 1200 (2d Cir. 2002).  *See also Kane v. Garcia Espitia*, 546 U.S. 9, 10 (2005) (absent a Supreme Court case establishing a particular right, federal court inference of right does not warrant federal habeas relief).

A decision is "contrary to" clearly established federal law where the state court applies a rule different from that set forth by the Supreme Court or if it decides a case differently than the Supreme Court on essentially the same facts. *Bell v. Cone*, 535 U.S. 685, 694 (2002). A state court unreasonably applies Supreme Court law when the court has correctly identified the governing law, but unreasonably applies that law to the facts of the case. The state court decision must be more than incorrect; it also must be objectively unreasonable, "a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

When reviewing a habeas petition, the federal court presumes that the factual determinations of the state court are correct. The petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Cullen v. Pinholster*, ___ U.S. ___, 131 S. Ct. 1388, 1398 (2011) (standard for evaluating state-court rulings where constitutional claims have been considered on the merits and which affords state-court rulings the benefit of the doubt is highly deferential and difficult for petitioner to meet). The presumption of correctness, which applies to "historical facts, that is, recitals of external events and the credibility of the witnesses narrating them," will be overturned only if the material facts were not adequately developed by the state court or if the factual determination is not adequately supported by the record. *Smith v. Mann*, 173 F.3d 73, 76 (2d Cir. 1999) (internal quotation marks and citation omitted).

In addition, the federal court's review under section 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. *Id.* at 1398-99. Because collateral review of a conviction applies a different standard than the direct appeal, an error that may have supported reversal on direct appeal will not necessarily be sufficient to grant a habeas

petition. *Brecht v. Abrahamson*, 507 U.S. 619, 634 (1993).

IV.    Discussion

The petitioner challenges his conviction on six grounds: (1) his conviction was obtained

with evidence seized in violation of the Fourth Amendment; (2) the Connecticut Supreme Court

denied him due process by reversing a prior decision and determining that the record was

inadequate to review his Fourth Amendment claim; (3) trial counsel was ineffective; (4) the state

habeas court improperly determined the facts in light of the evidence presented; (5) the

petitioner's confession was involuntary; and (6) the trial court violated the petitioner's right to

present a defense when it denied a one-day continuance to locate a witness.

A.    Fourth Amendment Claims

Brunetti's first and fifth grounds for relief relate to violations of the Fourth Amendment.

In the first ground, he argues that his clothing was improperly admitted into evidence because

both of his parents did not consent to the search of the residence.  In the fifth ground, Brunetti

argues that his confession should have been suppressed because it was not voluntary in that it

was obtained while he was illegally detained.[1]  At trial, Brunetti moved to suppress both the

confession and the evidence.  The motion to suppress was denied.

Fourth Amendment claims are not cognizable on federal habeas corpus review.  *See*

*Stone v. Powell*, 428 U.S. 465 (1976).  The Supreme Court held that "where the State has

provided an opportunity for full and fair litigation of a Fourth Amendment claim, the

_____

[1]Brunetti presented this claim in the state courts only as a Fourth Amendment violations,
i.e., he argued that his confession was predicated on the police's arresting him without probable
cause and on the allegedly illegal search of his home.  He did not assert a Fifth Amendment
claim that his confession was involuntary.  *See Brunetti II*, 279 Conn. at 69, 72-77, 901 A.2d at
21, 23-26.

Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id.* at 481-82; *accord Wallace v. Kato*, 549 U.S. 384, 395 n.5 (2007) (reaffirming that *Stone v. Powell* precludes federal habeas review of Fourth Amendment claims unless the state fails to provide opportunity for full and fair litigation).

In reaching this decision, the Supreme Court weighed the justification for and cost of the exclusionary rule. The primary justification for the exclusionary rule is to deter police conduct that violates a criminal defendant's Fourth Amendment rights. *Powell*, 428 U.S. at 486. One of the costs of the rule is the exclusion of evidence that "is typically reliable and often the most probative information bearing on the guilt or innocence of the defendant." *Id.* at 490. The Court determined that application of the exclusionary rule "deflects the truth-finding process and often frees the guilty." *Id.* Thus, the Court concluded that the disincentive to police misconduct created by application of the exclusionary rule at trial would not be enhanced by continued application of the rule on federal habeas corpus review occurring many years after trial. *Id.* at 493.

The Supreme Court has extended the holding in *Powell* to preclude a Fourth Amendment challenge to the introduction into evidence of a confession made after an allegedly unlawful arrest. *See Cardwell v. Taylor*, 461 U.S. 571, 572-73 (1983) (per curiam) (reversing grant of habeas corpus where Court of Appeals had determined that arrest violated Fourth Amendment and that custodial statements taken following arrest should have been suppressed). Following *Powell*, the Second Circuit developed a test to determine when a state prisoner has been denied an opportunity for full and fair litigation of his Fourth Amendment claims. *See*

*Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992). The Second Circuit concluded that the state is required only to provide an "opportunity" for the criminal defendant to obtain a full and fair litigation of the Fourth Amendment claim. Thus, review of Fourth Amendment claims in federal habeas petitions is warranted only in two instances, i.e., "if the state has provided no corrective procedures at all to redress the alleged [F]ourth [A]mendment violations" or "if the state has provided a corrective mechanism, but the [petitioner] was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." *Id.* (citations omitted). Whether a petitioner took full advantage of the opportunity to litigate his Fourth Amendment claims is irrelevant. The bar to federal habeas review of a Fourth Amendment claim applies as long as the state provided a full and fair opportunity for the petitioner to litigate that claim. *See Graham v. Costello*, 299 F.3d 129, 134 (2d Cir. 2002).

The Connecticut Practice Book sets forth the procedures for filing a motion to suppress evidence obtained as a result of an allegedly illegal search or seizure. *See* Conn. Practice Book §§ 41-12 through 41-17. Brunetti filed a motion seeking suppression of the evidence and his confession, and the trial court held a hearing on the motion. (*See* Resp't's Mem. App. U, Tr. of Feb. 27 & 28, 2002 hearing on motion to suppress.) Thus, Brunetti clearly had a full and fair opportunity to litigate his Fourth Amendment claims and cannot meet the first exception that would enable this Court to review these claims.

The second exception requires Brunetti to demonstrate an "unconscionable breakdown" in the state's corrective process. An "unconscionable breakdown in the state's process must be one that calls into serious question whether a conviction is obtained pursuant to those fundamental notions of due process that are at the heart of a civilized society." *Cappiello v.*

8

*Hoke*, 698 F. Supp. 1042, 1050 (E.D.N.Y. 1988) (noting as examples, bribing trial judge, government's knowing use of perjured testimony and extracting guilty plea by torture), *aff'd*, 852 F.2d 59 (2d Cir. 1988); *accord Capellan*, 975 F.2d at 70 (observing that "unconscionable breakdown" must entail some sort of "disruption or obstruction of a state proceeding"). Thus, the inquiry must focus on "the existence and application of the corrective procedures themselves" and not on the "outcome resulting from the application of adequate state court corrective procedures" to determine whether an unconscionable breakdown has occurred. *Capellan*, 975 F.2d at 71.

Brunetti availed himself of the state process by litigating his Fourth Amendment claims at trial. His disagreement with the state court's rulings "is not the equivalent of an unconscionable breakdown in the state's corrective process." *Id.* at 72; *Gates v. Henderson*, 568 F.2d 830, 840 (2d Cir. 1977) ("*Stone v. Powell* . . . holds that we have no authority to review the state record and grant the writ simply because we disagree with the result reached by the state courts."), *cert. denied*, 434 U.S. 1038 (1978).

Brunetti also seeks to link these claims with his ineffective assistance of counsel claims by arguing that counsel was ineffective for failing to move to suppress on the ground that consent by both his parents was required before the police could search his home. Ineffective assistance of counsel, however, is not the equivalent of unconscionable breakdown. *See Parker v. Ercole*, 582 F. Supp. 2d 273, 287 (N.D.N.Y. 2008) (citing cases). Thus, Brunetti has not demonstrated an unconscionable breakdown in the state process, and federal review of his Fourth Amendment claims is barred by *Stone v. Powell*. The petition for writ of habeas corpus is denied as to the first and fifth grounds for relief. The court considers Brunetti's Sixth Amendment

claims below.  *See Kimmelman v. Morrison*, 477 U.S. 365, 382-83 (1986) (rejecting arguments that *Stone v. Powell* bars Sixth Amendment ineffective assistance of counsel claims premised on counsel's failure to raise Fourth Amendment objections).

B.      Adequacy of Record

In his second ground for relief, Brunetti argues that the state courts inconsistently applied a procedural rule preventing review of his Fourth Amendment claims.  Specifically, he contends that he was denied due process because, on reconsideration en banc, the Connecticut Supreme Court reversed the prior holding and concluded that the record was inadequate to review the Fourth Amendment claims.  This Court is aware of no due process right to preclude a court from reconsidering a decision.  To the extent that this ground may be construed as a challenge to the determination that the record was adequate for review, this Court considers that claim below. The petition for writ of habeas corpus is denied on this ground.

C.      Ineffective Assistance of Counsel

In his third ground for relief, Brunetti contends that trial counsel was ineffective because he failed to move to suppress evidence on the ground that Brunetti's mother had not consented to the search of the residence.

An ineffective assistance of counsel claim is reviewed under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  To prevail, the petitioner must demonstrate, first, that counsel's conduct fell below an objective standard of reasonableness established by prevailing professional norms and, second, that this deficient performance prejudiced him.  *Id.* at 687-88.  Counsel is presumed to be competent, and the petitioner bears the burden of demonstrating unconstitutional representation.  *See United States v. Cronic*, 466 U.S. 648, 658

10

(1984).  To satisfy the prejudice prong of the *Strickland* test, the petitioner must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"; the probability must "undermine confidence in the outcome" of the trial.  *Strickland*, 466 U.S. at 694.  The court evaluates counsel's conduct at the time the decisions were made, not in hindsight, and affords substantial deference to counsel's decisions.  *See Rompilla v. Beard*, 545 U.S. 374, 381 (2005).  To prevail, the petitioner must demonstrate both deficient performance and sufficient prejudice.  *See Strickland*, 466 U.S. at 700.  If the court finds the petitioner's showing under one prong of the standard to be lacking, it need not consider the remaining prong.

Brunetti raised this claim in his state habeas action.  In denying the claim, the Connecticut Appellate Court cited *Strickland*.  Because the state court applied the correct legal standard, the state court decision cannot meet the "contrary to" prong of section 2254(d)(1).  The court will consider the last reasoned state court decision to determine whether the decision is an unreasonable application of federal law.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991).  Here, the Court reviews the ruling of the Connecticut Appellate Court affirming the denial the petition for writ of habeas corpus.

The Connecticut Appellate Court focused on the performance prong of the ineffective assistance of counsel standard.  The Sixth Amendment guarantees only a fair trial and competent counsel.  There is no requirement that counsel raise every possible constitutional claim.  *See Murray v. Carrier*, 477 U.S. 478, 486 (1986).  Federal courts interpreting the obligations of trial counsel have held that counsel is not required to raise novel theories or predict changes in the law.  *See, e.g., Clark v. Moran*, 942 F.2d 24, 33 (1st Cir. 1991) (holding that trial counsel was

not ineffective for failing to "explore all new and novel avenues of defense"); *Elledge v. Dugger*, 823 F.2d 1439, 1443 (11th Cir.) (holding that counsel moving to suppress confession was not ineffective because "[r]easonably effective representation cannot and does not include a requirement to make arguments based on predictions of how the law may develop"), *modified on other grounds*, 833 F.2d 250 (11th Cir. 1987), *cert. denied*, 485 U.S. 1014 (1988).  As stated by the Tenth Circuit, "Clairvoyance is not a required attribute of effective representation."  *U.S. v. Gonzalez-Lerma*, 71 F.3d 1537, 1542 (10th Cir. 1995) (internal quotation marks and citation omitted), *cert. denied*, 517 U.S. 1114 (1996).  State law also does not require counsel to present novel legal theories or predict changes in the law.  *See Ledbetter v. Commissioner of Correction*, 275 Conn. 451, 460-61, 880 A.2d 160, 166-67 (2005), *cert. denied sub nom. Ledbetter v. Lantz*, 546 U.S. 1187 (2006).

Trial counsel based his challenge to the search on the voluntariness of Brunetti's father's consent rather that the possible import of his mother's refusal to sign the consent form.  The U.S. Supreme Court has not addressed the specific issue whether the refusal of one co-occupant to consent to the search prohibits the use of evidence discovered during the search against an absent, third co-occupant.  The Connecticut Appellate Court noted that the issue was one of first impression in Connecticut.  In light of the lack of any U.S. Supreme Court cases directly on point,[2] the Connecticut Appellate Court's determination that trial counsel was not ineffective was

---

[2]After the trial in this matter (and after *Brunetti I* but before *Brunetti II*), the U.S. Supreme Court decided in *Georgia v. Randolph*, 547 U.S. 103 (2006), that a physically present co-occupant's stated refusal to permit entry prevails over the consent to search given by a co-occupant, such that a warrantless search is unreasonable and invalid as to the refusing co-occupant.  Obviously, *Randolph* was not on the books at the time that trial counsel was determining which Fourth Amendment issues to raise in his motion to suppress, and thus he cannot be faulted for failing to recognize whatever implications it might have had for the factual

a reasonable application of federal law.  Accordingly, the petition for writ of habeas corpus is denied on this ground.

      D.    <u>Unreasonable Determination of Facts</u>

In his fourth ground for relief, Brunetti argues that the state courts, during the habeas hearing and appeal, made an unreasonable determination of the facts in light of the evidence presented.  Specifically, he challenges the determination that the record failed to show that his mother affirmatively refused to consent to a search of the family home.  Because this factual determination concerns Brunetti's Fourth Amendment claims, it cannot be challenged in a federal habeas petition, for the reasons set forth above.  The petition for writ of habeas corpus is denied as to the fourth ground for relief.

      E.    <u>Right to Present a Defense</u>

In his sixth and final ground for relief, Brunetti contends that the trial court denied his right to present a defense when the court denied his request for a one-day continuance to locate a witness.

The Connecticut Supreme Court identified the following additional facts relevant to this claim.  Brunetti testified at trial that he did not murder the victim.  He stated that he went to the school to meet Jerrell Credle.  When Brunetti arrived, Credle, along with Michael Banores, Jose Rivera, and Michael Scott, took him to a wooded area behind the school and showed him the victim's body.  Brunetti then removed his sweat pants.  Credle dipped the pants in the victim's

---

situation with which he was confronted.  That factual situation differed in an important respect from the one in *Randolph*: in this case, the challenge to the search was brought by a third party who was not physically present at the time of the search and did not otherwise refuse to consent to the search.  In *Randolph*, the Court held only that the search was invalid *as to the refusing co-occupant*.  *See* 547 U.S. at 120 & n.8.

blood.  The five men then moved closer to the school and smoked marijuana.  *See Brunetti II*,
279 Conn. at 78-79, 901 A.2d at 27.

On March 7, 2002, prior to the conclusion of Brunetti's testimony, trial counsel made an
offer of proof outside the presence of the jury.  Brunetti testified that when Credle and the others
showed him the victim's body, Credle bragged about killing her and told Brunetti how he had
killed her.  Brunetti also stated that Credle had recited a prayer that involved the blood of the
sacrifice.  The trial court sustained the state's objection to the testimony as inadmissible hearsay.
The court found the testimony untrustworthy, noting that, although two of the other men had
testified, counsel had not questioned them about Credle's allegedly incriminating statements.
Trial counsel also told the court that he was attempting to locate Credle and argued that
preventing him from introducing Credle's statements would infringe on Brunetti's right to
present a defense.  The court recessed early to allow trial counsel time to provide the court with
precedent on the admissibility of the statements.  *See id.* at 79, 901 A.2d at 27.

When trial resumed the following morning, trial counsel failed to provide any law
concerning the admissibility of the statements.  Counsel requested a continuance until Monday,
March 11, 2002, to continue searching for Credle.  The trial court denied the request for
continuance because trial counsel had not elicited any testimony from the other men regarding
Credle's alleged statements and in light of the length of time charges had been pending and the
belated nature of the request.  *See id.* at 79-80, 901 A.2d at 27-28.

The trial court has broad discretion in deciding whether to grant a continuance.  *See*
*Morris v. Slappy*, 461 U.S. 1, 11-12 (1983).  There is no established test to determine "when a
denial of a continuance is so arbitrary as to violate due process.  The answer must be found in the

14

circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964).

Brunetti first appeared on the murder charge in June 2000.  Jury selection commenced in February 2002, and trial began in March 2002.  *See* Resp't's Mem. App. A at 1-2, 5-6.  Thus, trial counsel had twenty months to locate potential witnesses.  Trial counsel informed the court, however, that he attempted to subpoena Credle earlier during the week but was unsuccessful because he had an incorrect address.  Although he now had a current address, he learned that Credle had recently been arrested.  *See Brunetti II,* 279 Conn. at 80 n.46, 901 A.2d at 27 n.46.  In light of the admission that trial counsel had not verified Credle's address until after service of the subpoena was unsuccessful, the trial court reasonably determined that the request was belated. In addition, the trial court was aware that trial counsel had not elicited any testimony to support this defense from other persons who would have been able to verify the alleged statements.  The trial court's exercise of discretion in denying the request for continuance was not an unreasonable application of Supreme Court law.  The petition for writ of habeas corpus is denied on the sixth ground for relief.

V.    Conclusion

The petition for writ of habeas corpus [**Doc. #1**] is **DENIED**.  The court concludes that the petitioner has not made a substantial showing of the denial of a constitutional right.  Thus, a certificate of appealability will not issue.  *See* 28 U.S.C. § 2253(c)(2).

**So ordered** this 2nd day of October 2013, at Hartford, Connecticut.

_____/s/_____
Michael P. Shea
United States District Judge